NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 04a0050n.06
Filed: October 28, 2004

NO. 03-5904

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| METROPOLITAN BOARD OF PUBLIC EDUCATION OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, | ) ) ) ) ) ) ) ) |
| Petitioner-Appellant, | ) ) |
| v. | ) ON APPEAL FROM THE UNITED STATES ) DISTRICT COURT FOR THE MIDDLE |
| PACODA BELLAMY, ET AL., | ) DISTRICT OF TENNESSEE ) |
| Respondents-Appellees. | ) |

Before: GUY and CLAY, Circuit Judges; CARR, District Judge.*

CARR, District Judge. This is an appeal from a decision of the United States District Court for

the Middle District of Tennessee affirming an Administrative Law Judge's ("ALJ") decision in favor of

a student, Pacoda Bellamy, and her guardian in an administrative due process hearing held pursuant to

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The district court

found that the ALJ's conclusions were reasonable and held that Pacoda was not receiving an appropriate

_____

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting
by designation.

1

education at the time of her due process hearing. The district court also concluded that the remedies the ALJ ordered were entitled to deference. For the following reasons, we AFFIRM.

## I. BACKGROUND

Pacoda Bellamy ("Pacoda"), age seventeen, is currently in special education classes at Pearl Cohn High School in Nashville. The Nashville Metropolitan Public School District has been providing special education services to Pacoda via Individualized Education Plans ("IEP") since the 1990-91 school year. Pacoda has cerebral palsy, seizures, voiding dysfunction of the kidneys, asthma, and vision impairment.

Prior to the proceedings giving rise to this appeal, Pacoda was identified as a child with "multiple disabilities." Pacoda's 1999-2000 IEP — the IEP that was the focus of the due process hearing — identified Pacoda's disabilities as mental retardation and speech impairment. Apparently, Pacoda's mother and guardian (her grandfather) were involved in the development and implementation of Pacoda's IEPs throughout Pacoda's education. They became dissatisfied with the progress the school was making on Pacoda's IEP during the 1999-2000 school year when Pacoda began to exhibit some behavioral problems.

Pacoda's special education teacher, Angela McCuiston ("McCuiston"), testified at the due process hearing that Pacoda's behavior worsened after the 1999-2000 Winter break, and continued to be erratic in January and February. These behaviors included hanging out the window, climbing the stalls in the restrooms, and pushing things. McCuiston opined that Pacoda was upset because of tension between the school and Pacoda's family and because Pacoda's medications had recently changed.

On January 26, 2000, Pacoda began hitting another student, and would not stop until two teachers physically pulled her away. She was suspended for one day. Shortly thereafter, Pacoda's mother, Vicki Bellamy, requested an "M-team staffing" as soon as possible to discuss Pacoda's behavior and its causes.

Apparently getting no response, Pacoda's mother and guardian requested an IEP team meeting on February 3, 2000.

A meeting was held on February 23, 2000. According to the notes, the participants, including Pacoda's guardian, some special education coordinators, and a teacher — but not the full IEP team — discussed Pacoda's medication, scratches on Pacoda's face, and some confidentiality issues. Apparently, they did not discuss Pacoda's behavior or its causes. McCuiston, who was a member of the IEP team and arguably most familiar with her behavior at school, did not attend. She said later that she did not think an IEP team meeting was necessary.

On March 1, 2000, Pacoda "grabbed another student and would not let go." She was suspended from school for one day for this behavior. Again, on March 7, 2000, Pacoda hit and attempted to bite another student and was suspended for two days.

McCuiston did not feel that a behavioral functional assessment — an assessment in which specialists observe the child's behavior and make recommendations — was necessary in Pacoda's case. Thus, a behavioral assessment was never done.

Pacoda's IEP never included a behavioral plan; McCuiston relied on a "generic" behavior plan when working with Pacoda. McCuiston testified that she never had the opportunity to discuss with the IEP team whether to implement one after Pacoda's behavior worsened because on April 5, 2000, shortly after the fights, Pacoda was transferred to a new school. McCuiston's opposition to an IEP team meeting in February also prevented a behavioral plan from being discussed and/or implemented.

Pacoda's guardian, Leroy Bellamy, filed a request for a due process hearing on March 8, 2000. The due process hearing was held on May 11, 2000, and the ALJ issued a Memorandum and Final Order on October 6, 2000. The ALJ held that the school system's "failure to include an appropriate behavior

3

modification plan in the Student's IEP and implement that behavior plan in her education denies the Student a free, appropriate public education." J.A. at 27. The ALJ also held that Pacoda's 1999-2000 IEP had not been designed to confer a meaningful educational benefit on her. He ordered the IEP team to develop a new IEP that provided, at a minimum, "a qualified, one-on-one paraprofessional education assistant, a professionally-designed positive behavior plan, and four years of compensatory education, one of which shall be provided during extended school years . . . ." J.A. at 29. The school district appealed this order to the Middle District of Tennessee.

The district court held an evidentiary hearing on December 16, 2002, and issued a memorandum and order on June 11, 2003. The district court found that the evidence supported the ALJ's determination that the school district did not evaluate whether the student's disability was the cause of her behavior, try to determine what environmental or other triggers might cause Pacoda's erratic behavior, or develop a systematic behavior management plan.

The district court also found that Pacoda was not receiving an appropriate education at the time of the due process hearing because she had been mistakenly labeled "mentally retarded" throughout her education. To make this determination, the court relied on testimony of Dr. Judith Kaas-Weiss, who tested Pacoda using non-standard testing procedures that did not require Pacoda to verbalize or use fine motor skills (areas in which she has considerable trouble functioning). Ms. Kaas-Weiss concluded that Pacoda "has cognitive skills inconsistent with mental retardation."

The findings of Kaas-Weiss conflicted with those of the school district's experts, who used standard intelligence (IQ) tests to determine that Pacoda was mentally retarded. The district court found that the standard IQ tests — the Wechsler Intelligence Scale for Children - Third Edition and the Stanford-Binet Intelligence Scale - Fourth Edition — were not reliable indicators of Pacoda's abilities.

4

Thus, the district court held that Pacoda's IEP, which was based on an inaccurate assessment of her disabilities based on IQ tests, was not designed to confer on her a meaningful educational benefit.

The district court held that the ALJ was reasonable in concluding that Pacoda's IEP made inappropriate provisions for her behavior management. It also found that the school district had committed a procedural violation of the IDEA by failing to convene an IEP team meeting within ten days of the Bellamys' request that such meeting occur. Finally, the district court deferred to the educational remedies devised by the ALJ.

The school district claims that the district court committed prejudicial evidentiary errors at the evidentiary hearing when it accepted Ms. Kaas-Weiss's testimony about her evaluation of Pacoda, which had occurred after the due process hearing, considered IEPs from school years prior to the year at issue in that hearing, and allowed evidence of a procedural violation on the school's part.

In addition, the school district claims that the District Judge failed to make a proper determination that Pacoda was substantively harmed, and it also failed to give due weight to the administrative decision.

## II. STANDARD OF REVIEW

This court applies a clearly erroneous standard of review to the district court's findings of fact and a *de novo* standard of review to its conclusions of law. *Tucker v. Calloway County Bd. of Educ.*,136 F.3d 495, 503 (6th Cir. 1998).[1]

---

[1]The district court was required to apply a "modified" de novo standard of review to the ALJ's decision, meaning it

> was required to make its findings of fact based on a preponderance of the evidence contained in the complete record (including evidence contained in both the administrative record and in the record of deposition testimony made before the district court), while giving deference to the fact findings of the administrative proceedings provided it concluded, in the first step of the *Rowley* test, that the state agency had adhered to the procedural requirements of IDEA.

### III.  DISCUSSION

The IDEA "confers upon disabled students an enforceable substantive right to public education

. . . ." *Honig v. Doe*, 484 U.S. 305, 310 (1988) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982)).

Participating states must develop policies assuring all disabled children the right to a "free appropriate

public education" in the "least restrictive environment."  20 U.S.C. §§ 1412(1), (5).  To do this, schools

must work with a student's parents, teachers, and special education experts to develop an IEP for the

student.  "[T]he IEP sets out the child's present educational performance, establishes annual and short-

term objectives for improvements in that performance, and describes the specially designed instruction

and services that will enable the child to meet those objectives."  *Honig*, 484 U.S. at 311.

The IDEA also imposes extensive procedural requirements on states; for example, parents or

guardians must be permitted to examine all records relating to their child and participate in meetings

"with respect to identification, evaluation, and educational placement of the child, and the provision of

a free and appropriate public education to such child, and to obtain an independent educational

evaluation of the child . . . ."  20 U.S.C. § 1415(b)(1).

---

*Tucker*, 136 F.3d at 503 (citing  *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982)); *see also*
*Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 567 (6th Cir. 2000).

The "*Rowley* test" requires the district court to engage in a two-part inquiry when reviewing the
ALJ's decision:

> First, has the State complied with the procedures set forth in the Act?  And
> second, is the individualized education program developed through the Act's
> procedures reasonably calculated to enable the child to receive educational
> benefits?  If these requirements are met, the State has complied with the
> obligations imposed by Congress and the courts can require no more.

*Rowley*, 458 U.S. at 206-07.

If a parent or guardian is dissatisfied with the progress his or her child is making, she can request an impartial due process hearing, during which an impartial administrative hearing officer (the ALJ) will evaluate the parents' and the school district's evidence and legal arguments. *See* 20 U.S.C. § 1415(f). Either party may then appeal the decision of the ALJ to either state or federal court. 20 U.S.C. § 1415(i)(2). In the instant case, the school district appealed the ALJ's decision in favor of the student and her guardians to the appropriate federal court.

## A. Whether the District Court Correctly Admitted Additional Evidence Offered by Bellamy

The appellant school district argues that the district court inappropriately admitted evidence of: 1) assessments of Pacoda's disability that were not presented at the due process hearing; 2) prior IEPs that were not considered by the ALJ; and 3) information about a procedural violation, not raised at the due process hearing, committed by the school district during the 1999-2000 school year.

The IDEA mandates that a district court, reviewing an ALJ decision, "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B). The Sixth Circuit has interpreted the statutory phrase "additional evidence" broadly, explaining that the term "'[a]dditional,' in its ordinary usage, implies something that is added, or something that exists by way of addition. To 'add' means to join and unite; the limitation on what can be joined inherent in the term 'supplement' is not present in the term 'add.'" *Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999) (quoting *Metro. Gov't of Nashville and Davidson County v. Cook*, 915 F.2d 232, 234 (6th Cir. 1990)).

A district court may not, however, admit evidence to rule on issues beyond those presented to the ALJ. *Id.* This approach balances IDEA's mandate that courts consider additional evidence with the

7

requirement that the parties exhaust their remedies at the administrative level before presenting an issue to the courts. *Id.*

## 1. Additional Testimony by Individuals Who Examined Pacoda After the Due Process Hearing

The school district argues that the district court improperly admitted the testimony of Dr. Judith Kaas-Weiss and Jennie McGuire.

Kaas-Weiss evaluated Pacoda in April, 2001, and testified at the district court's evidentiary hearing in December, 2002, that, in her opinion, Pacoda is not mentally retarded.[2] J.A. at 263. Her opinion contrasted with that of the school district's experts, who evaluated Pacoda using different intelligence tests — the Wechsler and Stanford-Binet tests — and determined that Pacoda is mentally retarded.[3]

McGuire, a speech therapist, began providing speech therapy to Pacoda in January, 2002. In October, 2002, McGuire began training Pacoda to use a communication device that allows Pacoda to communicate her needs through a picture-based screen. J.A. at 54. She testified that Pacoda has made

---

[2]Kaas-Weiss explained that she administered a test to Pacoda called the Comprehensive Test of Nonverbal Intelligence (CTONI). J.A. at 52-53. She explained that this test differs from the Wechsler and Stanford-Binet tests used by the school district to evaluate Pacoda because the CTONI does not require the test subject to verbalize answers or use fine motor skills. Kaas-Weiss thought the CTONI was more appropriate for Pacoda because "she's incomprehensible when she speaks, so there is no way, even if she knew the answer in her head to the verbal portion of the [Wechsler] test, to respond comprehensively. And the performance part [of the Wechsler test] requires fine motor skills that she doesn't have."

[3]Pacoda's IQ was tested in 1995 by Josephine Cheatham, M.Ed., who administered a series of tests, including the Stanford-Binet test, and concluded that Pacoda was mentally retarded. J.A. at 51. In 1999, Dr. Warren Thompson, a psychologist for the school district, administered the Wechsler test to Pacoda. Dr. Thompson also determined that Pacoda was mentally retarded. To make this determination, Thompson administered both verbal and performance portions of the test. Although he thought that Pacoda's speech was difficult to understand, he concluded that he could understand her well enough to score her answers.

8

considerable progress with the communication device and will be able to use it throughout her life. J.A. at 247.

The school district argues that neither Kaas-Weiss's nor McGuire's testimony relates back to Pacoda's 1999-2000 IEP – the only IEP, according to the school board, at issue – and is thus not properly admissible under *Guest*. The school district argues that the Bellamys did not raise the issue of the appropriateness of the mentally retarded designation on Pacoda's IEP at the due process hearing; thus, according to the school district, they could not introduce evidence to contradict that designation at the hearing before the district court.

The Bellamys argue, in response, that the testimony at issue, which goes directly to the question of whether, how, and what Pacoda can learn, applies directly to whether Pacoda's 1999-2000 IEP was appropriate to her educational needs.

The mere fact that Kaas-Weiss and McGuire examined Pacoda after the due process hearing occurred does not, by itself, make admission of their testimony erroneous. *See Guest*, 193 F.3d at 462-63. The district court should not, however, "allow such evidence to change the character [of] the hearing from one of review to a trial *de novo*." *Cook*, 915 F.2d at 234-35. The district court should "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Id.* at 235.

The focus in the instant case is on whether the district court admitted the testimony of Kaas-Weiss and McGuire for the purpose of deciding issues that were not decided by the ALJ. *See, e.g.*, *Guest*, 193

F.3d at 463 (holding that the district court exceeds its jurisdiction when it uses additional evidence to rule on issues beyond those presented to the ALJ).

Although the district court's conclusion that "the IEPs developed for her were not properly designed to confer a meaningful educational benefit" refers to IEPs (i.e., plural IEPs), this does not lead to the conclusion that the district court improperly expanded the scope of its evidentiary hearing and review when it admitted the testimony of Kaas-Weiss and McGuire.

The Bellamys were not asking the district court to evaluate Pacoda's other IEPs, and the district court did not rule directly on the appropriateness of them. It merely relied on Kaas-Weiss's testimony that Pacoda's condition and cognitive abilities appeared to have been improperly diagnosed for several years to support its conclusion that her diagnosis of her disability – and, therefore, her education plan – was inappropriate for the school year 1999-2000. This is not a situation where the district court used the testimony of Kaas-Weiss and McGuire to hold that Pacoda's other IEPs were inappropriate or ordered remedies related to those IEPs.

The district court's action echoed the trial court's action in *Guest*, in which this Court stated that "[e]vidence arising from events occurring during the 1996-1997 and 1997-1998 school years was properly admitted by the district court, but only for the purpose of deciding whether the proposed IEP for the 1996-1997 school year was reasonably calculated to lead to educational benefits." 193 F.3d at 463 (citing *Rowley*, 458 U.S. at 206-07; *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993)); *see also Fuhrmann*, 993 F.2d at 1040 ("evidence of a student's later educational progress may only be considered in determining whether the original IEP was reasonably calculated to afford some educational benefit").

10

Consideration of the factors recited in *Cook* – not allowing a party to undercut the statutory role of administrative expertise, the unfairness of allowing a party to save its best evidence for trial, the reason for the witness's failure to testify at the due process hearing, and conservation of judicial resources – support the district court's decision to admit the evidence. *See* 915 F.2d at 235. First, in this case, the testimony of the witnesses before the district court supported, rather than undercut the determination of the administrative law judge.

Next, the Bellamys could not have presented the testimony of Kaas-Weiss and McGuire at the due process hearing because neither examined Pacoda until after the hearing. Their decision to procure these evaluations grew out of their belief that the 1999-2000 IEP was insufficient and failed to serve Pacoda's needs. The additional evidence provided by Kaas-Weiss and McGuire supported the contention that they had asserted consistently.

Additionally, the Bellamys were not represented by counsel at the due process hearing. Although this does not excuse their failure to present additional evidence at the due process hearing, it helps to explain their failure to have obtained this evidence earlier.

Because the Bellamys had neither the opportunity nor resources to procure additional evaluations of Pacoda before the due process hearing, the district court did not abuse its discretion, in its effort fairly to adjudicate the Bellamy's appeal, when it introduced this additional evidence.

### 2. Undisputed IEPs

The school district argues that the ALJ's decision was based solely on the appropriateness of the 1999-2000 IEP; therefore, the district court should not have considered other IEPs in evaluating the ALJ's decision. The school district also contends that the district court's consideration of the additional evidence improperly changed the character of the hearing "from one of review to a trial *de novo*." *Cook*,

11

915 F.2d at 235. Finally, the school district asserts that it presented the only evidence at the due process hearing regarding the appropriateness of the disputed IEP.

The Bellamys point out that the ALJ considered several evaluations of Pacoda conducted prior to the 1999-2000 school year. Citing the school district's evaluations of Pacoda in 1993, 1995, and 1999, and noting that Pacoda throughout this period had scored below average on the Wechsler test and Vineland Adaptive Behavior Scales, the ALJ observed the her "performance measured by these standardized tests falls within a narrow range at the lowest percentiles; therefore, even changes in the Student's measured performance that might have statistical significance are, as a practical matter, inconsequential." J.A. at 20. Thus, prior IEPs were part of the record before the ALJ.

That the ALJ looked to the earlier IEPs to assess Pacoda's needs is apparent from his order to the district that it provide Pacoda with four years of compensatory education. This remedy was, at least in part, based on the pre-1999-2000 school year evaluations.

As noted above, a district court may admit additional evidence provided it does not use that evidence to rule on issues not before the ALJ. *Guest*, 193 F.3d at 463. In this case the district court's memorandum cited Pacoda's previous IEPs to demonstrate the course of the diagnoses of her condition during her enrollment in the defendant's schools. The district court also noted that Pacoda's IEP for the 1999-2000 school year took into account her intelligence scores from previously-administered evaluations – the same evaluations the ALJ discussed.

Although the district court must "be careful to avoid imposing [its] view of preferable educational methods upon the States," *Rowley*, 458 U.S. at 207, the scope of the district court's analysis remained confined to the question of whether the IEP for the 1999-2000 school year was adequate to meet Pacoda's needs. This was the issue before the ALJ. While the district court may have accorded greater

weight to some of the evidence, or examined it in greater detail than did the ALJ, it did not exceed the proper scope of its review, or otherwise err when it took cognizance of Pacoda's earlier IEPs.

### 3. Evidence of the District's Procedural Violation

The Bellamys requested an IEP team meeting on February 3, 2000. The rules of the Tennessee State Board of Education require that such meeting be convened within ten school days of such request. Tenn. Dep't of Educ., State Bd. of Educ., *Rules, Regulations, and Minimum Standards for the Operation of the Public School System* 0520-1-9-.10(3)(a), available at http://www.state.tn.us/sos/rules/0520/0520-01/0520-01.htm ("Upon the written request of any member, the IEP team shall be convened within ten (10) schooldays to review or revise the IEP or consider the child's placement."). According to the record, such a meeting was not convened – the February 23, 2000, meeting did not occur within ten days, nor did the entire IEP team attend. The full IEP team finally met on March 31, 2000, long after the ten-day period had expired. This was, according to the Bellamys, a procedural violation.[4]

The school district asserts that the ALJ made no finding of procedural violations by the school district; thus, the school district argues, the district court's decision to admit evidence of such a violation was improper.

---

[4]School districts have an obligation to "establish and maintain" procedural safeguards under 20 U.S.C. § 1415(a) In *Rowley*, the Supreme Court explained:

> It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, *e.g.*, §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard.

458 U.S. at 205-06.

13

The Bellamys assert that the ALJ properly admitted evidence of the procedural violation at the due process hearing, even though he did not mention the procedural violation in his order or memorandum. The Bellamys also argue that, even if the district court erred in admitting evidence of the procedural violation, the district court's opinion should be affirmed because the court did not rely on that procedural violation in reaching its decision.

The school district is correct that the ALJ did not make a finding that the failure timely to convene the IEP meeting constituted a procedural violation. The Bellamys, on the other hand, correctly contend that the ALJ admitted evidence of their request for such meeting and the school district's failure to respond to that request.

Nothing in the Sixth Circuit's case law suggests that the district court is precluded from making a finding that a procedural violation occurred just because the ALJ did not make such a finding. The district court applies a "modified" de novo standard of review to the findings of the ALJ. *Tucker*, 136 F.3d at 503. The district court is required "to make its findings of fact based on a preponderance of the evidence contained in the record (including evidence contained in both the administrative record and in the record of deposition testimony made before the district court), while giving deference to the fact findings of the administrative proceedings . . . ." *Id.*

In the instant case, the ALJ admitted the evidence on which the district court made its finding that the Bellamys' request for an IEP team meeting triggered the school district's duty to convene such a meeting. J.A. at 58. Thus, the finding of the procedural violation by the district court was based on evidence admitted previously by the ALJ.

### B. Whether the District Court Made a Proper Determination That Pacoda was Substantively Harmed

14

The school district argues that, even if the district court could properly conclude that a procedural violation occurred, it made no findings of fact or conclusions of law that the procedural violation constituted substantive harm.

> A procedural violation of the IDEA is not a per se denial of a [free and appropriate public education ("FAPE")]. Rather, a procedural violation will constitute a denial of FAPE only if it causes substantive harm to the child or [her] parents; such as seriously infringing on the parents' opportunity to participate in the IEP process, depriving an eligible student of an IEP, or causing the loss of educational opportunity.

*Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 520 (6th Cir. 2003) (citing *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765-66 (6th Cir. 2001).

Any error, if such there was, in the district court's determination of whether Pacoda was substantively harmed as a result of the failure to hold a timely IEP meeting does not affect the outcome of this case. Having upheld the ALJ's determination that the IEP, once adopted, was insufficient, it is not necessary for this court to address the district court's decision regarding the effect of any procedural error that preceded the adoption of that IEP.

### C. Whether the District Court Gave Due Weight to the Administrative Decision

A district court must give deference to the administrative findings under a "modified" *de novo* standard of review. *See McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003) ("The modified de novo standard of review applies to both procedural and substantive matters. . . . '[A] district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'") (quoting *Knable*, 238 F.3d at 764).

"The amount of weight due to administrative findings is based on whether the finding was based on educational expertise." *Id.* Less weight is due when the ALJ's determinations are based on "matters

15

for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation." *Id.* More weight is due to the ALJ's determinations on "matters for which educational expertise is relevant." *Id.* (citing *Burilovich*, 208 F.3d at 567).

The school district argues that it presented the only educational expertise on the issue of the nature of Pacoda's disabilities at the due process hearing; thus, the school argues, the district court failed to give due deference to the school district's experts when it ruled in favor of the Bellamys.

The school district's argument presumes that its objection to the district court's admission of the testimony of Kaas-Weiss and McGuire was well-taken. We have, however, concluded otherwise. That testimony having been admitted properly, it was also considered properly. When the district court considered that evidence in the course of upholding the ALJ, it did not fail to give due deference to the administrative decision.

Moreover, and perhaps more importantly, the school district misreads *McLaughlin*. That case does not require the giving of deference to *evidence*; it requires, rather, that due weight must be given to "an administrative *decision* involving methodology and educational expertise." 320 F.3d at 669 (emphasis added); *see also Doe By and Through Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989) ("The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings."). Nothing in the district court's proceedings or decision failed to comply with this obligation.

## IV. CONCLUSION

For the foregoing reasons we AFFIRM the district court.

16